1

2

3

4

5                    UNITED STATES DISTRICT COURT

6                   NORTHERN DISTRICT OF CALIFORNIA

7

8   STEVEN DEAN PARKS,                          No. C-12-6140 EMC (pr)

9            Plaintiff,

10       v.                                     **ORDER OF DISMISSAL WITH LEAVE
                                                TO AMEND**
11  G. WILLIAMS, C/O,

12           Defendant.
    _____/

13

14                      I.    **INTRODUCTION**

15       Steven Dean Parks, an inmate at San Quentin State Prison, filed a *pro se* civil rights action

16  under 42 U.S.C. § 1983.  His complaint is now before the Court for review under 28 U.S.C. §

17  1915A.

18                      II.   **BACKGROUND**

19       The complaint in this action is rather confusing, and is made only slightly less so by reading

20  the exhibits.  In this action, Mr. Parks sues defendant correctional officer ("C/O") E. Williams for

21  his acts in connection with the issuance of a CDC 128-A counseling chrono ("counseling chrono")

22  that documented minor inmate misconduct by Mr. Parks.[1]

23  _____

24       [1] The CDC-128-A counseling chrono is the second least serious response to inmate
    misconduct.  California regulations provide for several ways for prison staff to handle inmate
25  misconduct.  "Staff may respond to minor misconduct by verbal counseling.  When verbal
    counseling achieves corrective action, a written report of the misconduct or counseling is
26  unnecessary."  Cal. Code Regs. tit. 15, § 3312(a)(1).  "When similar minor misconduct recurs after
    verbal counseling or if documentation of minor misconduct is needed, a description of the
27  misconduct and counseling provided shall be documented on a CDC Form 128-A, Custodial
    Counseling Chrono."  *Id.* at § 3312(a)(2).  The inmate receives a copy and the original is placed in
28  his file.  *Id.*  The regulation does not contemplate any further action being taken on a CDC 128-A.
    When misconduct "is believed to be a violation of law or is not minor in nature," a CDC-115 rule

**United States District Court**
For the Northern District of California

1    On July 13, 2012, C/O Williams issued a counseling chrono to Mr. Parks for being in a place

2  he was not supposed to be at that particular time:

3           I observed inmate Parks . . . taking a shower when there was no
            shower program being conducted in West Block.  I ordered inmate
4           Parks to get out of the shower and to return to his assigned cell and
            lock up.  I counseled inmate Parks and advised him that there was no
5           shower program at that time in the unit, and would not be any shower
            program until 1100 hours.  I further advised inmate Parks that he
6           would be receiving a CDC-128A for being out of bounds.

7  Docket # 1-1, p. 4.

8      Mr. Parks alleges that the shower was not out of bounds and that, in any event, he needed a

9  shower because he was very ill.  He further alleges that he was ill because there was "unsafe soap

10  that was under state wide recall."  Docket # 1, p. 3.  The exhibit that allegedly shows the "unsafe

11  soap" is a memorandum for distribution to the staff and inmate population that stated that the

12  California Prison Industry Authority (CALPIA) recommended that its customers stop using bar soap

13  already purchased from CALPIA because it had been discovered that "a trace amount of chemical

14  that is listed for review under the Safe Drinking Water and Toxic Enforcement Act of 1986

15  (Prroposition 65) as carcinogen was found to be present in CALPIA's bar soaps.  CALPIA has

16  ceased production of soap using this ingredient."  Docket # 1-1, p. 5.  That same memorandum

17  stated that CALPIA "has not been contacted by anyone reporting health concerns associated with

18  this product" and was discontinuing it as a precautionary measure.  *Id.*

19      Mr. Parks contends that C/O Williams "made it a joke.  This is a violation of my 8th

20  Amendment/deliberate indifference to my medical care and needs."  Docket # 1, p. 3. Mr. Parks

21  does not allege what "it" was, i.e., what C/O Williams joked about.

22                        **III.    DISCUSSION**

23      A federal court must engage in a preliminary screening of any case in which a prisoner seeks

24  redress from a governmental entity or officer or employee of a governmental entity.  *See* 28 U.S.C.

25

26

27
   violation report may be issued.  *Id.* at § 3312(a)(3).  CDC-115 rule violation reports are classified as
28  administrative or serious, trigger certain procedural protections, and can result in various forms of
   discipline for the offending inmate.  *See* Cal. Code Regs. tit. 15, §§ 3313-3316.

2

**United States District Court**
For the Northern District of California

1   § 1915A(a).  In its review the court must identify any cognizable claims, and dismiss any claims

2   which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek

3   monetary relief from a defendant who is immune from such relief.  *See id.* at § 1915A(b).  *Pro*

4   *se* pleadings must be liberally construed.  *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699

5   (9th Cir. 1990).

6          To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements:  (1) that a right

7   secured by the Constitution or laws of the United States was violated and (2) that the violation was

8   committed by a person acting under the color of state law.  *See West v. Atkins*, 487 U.S. 42, 48

9   (1988).

10  A.    Medical Claim

11         Deliberate indifference to a prisoner's serious medical needs amounts to the cruel and

12  unusual punishment prohibited by the Eighth Amendment.  *Estelle v. Gamble*, 429 U.S. 97, 104

13  (1976).  A prison official violates the Eighth Amendment only when two requirements are met:

14  (1) the deprivation alleged is, objectively, sufficiently serious, and (2) the official is, subjectively,

15  deliberately indifferent to the inmate's health or safety.  *See Farmer v. Brennan*, 511 U.S. 825, 834

16  (1994).  Accordingly, evaluating a claim of deliberate indifference necessitates examining "the

17  seriousness of the prisoner's medical need and the nature of the defendant's response to that need."

18  *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds, WMX*

19  *Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).  "A 'serious' medical

20  need exists if the failure to treat a prisoner's condition could result in further significant injury or the

21  'unnecessary and wanton infliction of pain.'"  *Id.* (quoting *Estelle*, 429 U.S. at 104).  A prison

22  official exhibits deliberate indifference when he or she knows of and disregards a substantial risk of

23  serious harm to inmate health.  *See Farmer*, 511 U.S. at 837.

24         Mr. Parks alleges that C/O Williams was deliberately indifferent to his medical needs in the

25  July 13, 2012 incident.  Even with liberal construction, the *pro se* complaint does not adequately

26  allege a serious medical need.  The fact that the soap was recalled due to trace amounts of a

27  carcinogen does not suggest a serious medical need for an inmate who had used it.  The *pro se*

28  complaint also does not adequately allege deliberate indifference by the correctional officer: issuing

**United States District Court**
For the Northern District of California

1  a counseling chrono to an inmate for being in the shower at an unscheduled time does not show

2  deliberate indifference.

3      On an exhibit attached to the complaint, Mr. Parks wrote that he had a "neuro-virus;" that

4  C/O Williams was told of his neuro-virus; and that C/O Williams told Mr. Parks to show him a

5  chrono.  Docket # 1-1, p. 4.  Mr. Parks does not indicate that he showed C/O Williams a chrono or

6  any other authorization for him to shower.  To the extent Mr. Parks suggests that the ducat on the

7  same page gave him permission to shower, he errs: the inmate ducat (i.e., permission slip) was for

8  the day before the shower incident and allowed him to go for a "BP check."  *Id.*

9      As it cannot be said that it is impossible for Mr. Parks to amend to allege a cognizable Eighth

10  Amendment claim, the court will grant leave to amend.  In his amended complaint, he must allege

11  facts showing both a serious medical need and deliberate indifference to it by C/O Williams.

12  B.      The Counseling Chrono

13      False charges alone are not actionable under § 1983 because falsely accusing an inmate of

14  misconduct does not violate a right secured by the Constitution or laws of the United States.   For a

15  false accusation to be potentially actionable, the false charge must implicate some constitutional

16  right, such as the Fourteenth Amendment's right to due process or the First Amendment-based right

17  to be free from retaliation.  An allegation of a false charge that results in discipline that is not severe

18  enough to amount to a deprivation of a protected liberty interest under *Sandin v. Conner*, 515 U.S.

19  472 (1995)[2] – such as imposing an atypical and significant hardship or by inevitably affecting the

20  duration of confinement – does not state a claim under § 1983.  *See Smith v. Mensinger*, 293 F.3d

21

22      [2]  The Due Process Clause of the Fourteenth Amendment of the U.S. Constitution protects
23  individuals against governmental deprivations of life, liberty or property without due process of law.
    Changes in conditions of confinement for a prison inmate may amount to a deprivation of a
    constitutionally protected liberty interest, provided that the liberty interest in question is one of "real
24  substance."  *Sandin v. Conner*, 515 U.S. 472, 477-87 (1995).  An interest of "real substance" will
    generally be limited to freedom from (1) restraint that imposes "atypical and significant hardship on
25  the inmate in relation to the ordinary incidents of prison life," *id.* at 484, or (2) state action that "will
    inevitably affect the duration of [a] sentence," *id.* at 487.  In determining whether a restraint is an
26  "atypical and significant hardship," courts consider whether the challenged condition mirrored the
    conditions imposed on inmates in administrative segregation and protective custody, the duration of
27  the condition, the degree of restraint imposed, and whether the discipline will invariably affect the
    duration of the prisoner's sentence.  *See Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003);
28  *Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003).

United States District Court

For the Northern District of California

1  641, 653-54 (3d Cir. 2002) (no § 1983 claim was stated for allegedly false charges because the

2  disciplinary confinement imposed was too short to amount to an atypical and significant hardship

3  under *Sandin*); *accord Strong v. Ford*, 108 F.3d 1386, 1997 WL 120757 (9th Cir. 1997)

4  (unpublished table case) (affirming summary judgment in favor of defendants where guard's

5  allegedly false statement resulted in a loss of 30 days time credit that was ultimately restored; "[t]he

6  alleged making of a false charge, however reprehensible or violative of state law or regulation, does

7  not constitute deprivation of a federal right protected by 42 U.S.C. § 1983 when it does not result in

8  the imposition of 'atypical hardship on the inmate in relation to the ordinary incidents of prison

9  life'").  Even if the false charge does result in discipline that amounts to the deprivation of a

10  protected liberty interest under *Sandin*, a § 1983 claim is not stated if the inmate is afforded the

11  procedural protections required by federal law at the disciplinary hearing.  *See Smith*, 293 F.3d at

12  654; *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989); *Freeman v. Rideout*, 808 F.2d 949, 951

13  (2d Cir. 1986); *Hanrahan v. Lane*, 747 F.2d 1137, 1140-41 (7th Cir. 1984).

14         Here, Mr. Parks did not allege any facts to suggest that the allegedly erroneous charge in the

15  counseling chrono implicated some constitutional right.  The "discipline" consisted of nothing more

16  than being advised that he was out of bounds and being told not to do it again.  No due process claim

17  is stated because the "discipline" was not severe enough to amount to a deprivation of a protected

18  liberty interest under *Sandin*.  As it cannot be said that it is impossible for Mr. Parks to amend to

19  allege a cognizable § 1983 claim based on the issuance of the counseling chrono, the Court will

20  grant leave to amend.

21                                   **IV.   CONCLUSION**

22         The complaint fails to state a claim upon which relief may be granted.  Leave to amend will

23  be granted so that Plaintiff may attempt to state a claim.  The amended complaint must be filed no

24  later than **May 31, 2013**, and must include the caption and civil case number used in this order and

25  the words AMENDED COMPLAINT on the first page.  Plaintiff is cautioned that his amended

26  complaint must be a complete statement of his claims.  *See Lacey v. Maricopa County*, 693 F.3d

27  896, 928 (9th Cir. 2012) (en banc) ("For claims dismissed with prejudice and without leave to

28  amend, we will not require that they be repled in a subsequent amended complaint to preserve them

1  for appeal. But for any claims voluntarily dismissed, we will consider those claims to be waived if

2  not repled.")  Failure to file the amended complaint by the deadline will result in the dismissal of the

3  action.

4

5      IT IS SO ORDERED.

6

7  Dated:  April 23, 2013

8                                                              _____
                                                                EDWARD M. CHEN
9                                                              United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

6